(March 20, 1922.)

MARK COFFIN, Administrator of the Estate of CHAS. A. WILHITE, Deceased, Appellant, v. S. E. HYDE. Respondent.

[205 Pac. 736.]

GIFT CAUSA MORTIS—REQUISITES—MODE OF TRANSFER—PRESUMPTION.

1. To constitute a valid gift *causa mortis,* it must be made with a view to the donor's death, and must have been given while the donor was in peril of death, or while he was under the apprehension of impending dissolution from an existing malady.

2. The test of an effectual gift *causa mortis* is that the mode of transfer was such that, in conjunction with the donative intention, it completely stripped the donor of his dominion of the thing given.

3. In the absence of explanatory or contradictory evidence, the possession by the donee of an instrument in regular form transferring the title of property to him is sufficient to raise the pre-

Publisher's Note.

1. The law of gifts *causa mortis,* see note in 99 **Am. St.** 890.

sumption that the instrument was delivered by the grantor with intent that it should take effect according to its terms.

4. *Held*, in the instant case, that the evidence shows decedent intended to confer upon respondent the ownership of the property in controversy, that he proceeded to do so by executing and delivering to respondent a bill of sale to the property, and that the gift thereupon became complete.

APPEAL from the District Court of the Third Judicial District, for Ada County.    Hon. Chas. F. Reddoch, Judge.

Action in claim and delivery.   Judgment for defendant.
*Affirmed.*

Frawley & Koelsch, for Appellant.

The distinction between a gift *inter vivos,* a gift *causa mortis,* and an attempt at testamentary disposition is fully illustrated by the following authorities: *Basket v. Hassell,* 107 U. S. 602, 2 Sup. Ct. 415, 27 L. ed. 500; *McCord's Admr. v. McCord,* 77 Mo. 166, 46 Am. Rep. 9; *Longenfiel v. Richter,* 60 Minn. 49, 61 N. W. 826; 14 Cyc. 1060; *Hart v. Ketchum,* 121 Cal. 426, 53 Pac. 931; *Foxworthy v. Adams,* 136 Ky. 403, Ann. Cas. 1912A, 327, 124 S. W. 381, 27 L. R. A., N. S., 308; *Black v. Sharkey,* 104 Cal. 279, 37 Pac. 939.

There is no evidence that Wilhite intended the title to pass with the delivery of the bill of sale, and all the facts and circumstances argue against such having been his intention.   (*Knight v. Tripp,* 121 Cal. 674, 54 Pac. 267.)

Edwin Snow, for Respondent.

The transaction is clearly sustainable outside of the language of the bill of sale itself as a clear gift *causa mortis* having all the requisite elements thereof.   (12 R. C. L., pp. 962, 969; *Basket v. Hassell,* 107 U. S. 602, 2 Sup. Ct. 415, 27 L. ed. 500.)

A conveyance absolute on its face, delivered directly to the grantee, cannot be defeated upon the implication that it was not to take effect till after the grantor's death.   (*Mowry*

v. *Heney,* 86 Cal. 471, 25 Pac. 17; Devlin on Deeds, secs. 284, 314; Jones, Real Property, sec. 1303; *Hammond v. McCollough,* 159 Cal. 639, 115 Pac. 216; *Albert v. Albert,* 12 Cal. App. 268, 107 Pac. 156; *Winchester v. Winchester,* 175 Cal. 391, 165 Pac. 965.)

BUDGE, J.—This is an action in claim and delivery, brought by appellant to recover possession of about 125 head of cattle or the value thereof.

It is alleged in the complaint that Charles A. Wilhite died intestate on Dec. 1, 1917, at Boise, Ada county, and that appellant is the duly and regularly appointed, qualified and acting administrator of his estate; that at and for some time prior to his death, deceased was the owner and in possession of about 125 head of mixed cattle of which respondent wrongfully and unlawfully took possession about Dec. 3, 1917, and still retains such possession; that prior to the commencement of this action appellant demanded of respondent the possession of said cattle, but respondent refuses to surrender such possession.

In the answer, respondent denies the wrongful taking of possession of the cattle in controversy, but admits that at the time and prior to the commencement of this action he was and now is in the lawful possession of certain of the cattle described in the complaint, which he acquired by purchase and of which he is the sole owner.

By stipulation of the parties, the cause was transferred to the district court for Ada county. A jury trial was waived by both parties, and the cause was tried to the court and findings of fact and judgment were made and entered in favor of respondent. A motion for new trial was denied. This appeal is from the judgment and from the order denying the motion for new trial.

Appellant makes five assignments of error, as follows:

1. The court erred in finding that on or about November 27, 1917, Charles Wilhite, by a good and sufficient bill of sale in writing, conveyed and transferred to the respondent,

S. E. Hyde, said Wilhite's one-half interest in and to said cattle.

2. The court erred in finding that ever since said November 27th the respondent has been the sole owner and in possession of said cattle and entitled to possession thereof.

3. The court erred in finding that respondent did not at any time wrongfully or unlawfully or without the consent of the owner of said property take possession of said cattle or any part thereof, or ever unlawfully retain, nor does he now unlawfully retain possession of the same.

4. The court erred in concluding that "the said estate of Charles Wilhite, deceased, did not at the time of the commencement of this action, have, nor has it since acquired any right, title or interest in said cattle or any part thereof or any interest therein," and that appellant was not then nor is he now entitled to possession of the same or any part thereof.

5. The court erred in concluding that respondent at the time of the commencement of this action was and now is the owner of and entitled to the possession of all of said property.

The evidence shows that on Nov. 24, 1917, the deceased underwent an operation for appendicitis at a Boise hospital. On the following day, his condition became alarming, and upon the suggestion of the physician in attendance that it might be proper to fix up his business affairs in case of eventualities, deceased instructed Mrs. Hyde, wife of the respondent, to bring certain papers from his deposit box at the bank. Later that morning his attorney and a notary public were summoned to the hospital. In their presence and in the presence of Mrs. Hyde, the deceased there executed a bill of sale conveying to respondent, deceased's one-half interest in the cattle here involved, which he and respondent owned in partnership. The bill of sale was prepared by deceased's attorney, recited that it was made "in consideration of the sum of one dollar and other valuable consideration, the receipt of which is hereby acknowledged,"

and was delivered in the afternoon of the same day to respondent. Deceased never recovered from his illness, although he showed apparent improvement on Nov. 29th, and died on Dec. 1, 1917.

Appellant contends that the best that can be said for the entire transaction is that it was an attempt on deceased's part at a testamentary disposition of his property; that it was not a gift *causa mortis* nor *inter vivos* but a mere attempt at a testamentary disposition not made in accordance with the requirements of a will and therefore void. It is conceded that the bill of sale was executed and delivered to respondent, but it is urged that it was not accompanied with the intent that title should pass, that deceased did not then realize his impending death, but, on the contrary, expressed his hope of life.

A donation *mortis causa* is a gift of personal property made by a person during his last illness, or when he is in imminent peril of death, or in expectation of death, which the donee is to retain as absolutely his own if the donor shall die of that illness or peril, but which is revocable by the donor at any time during his life, and which is revoked by implication by the recovery of the donor (2 Bl. Com., p. 514; 2 Kent's Com., 14th ed., p. 444; 1 Story's Eq., sec. 606; 2 Underhill on Wills, sec. 755, p. 1065), and, as was held in *Basket v. Hassell,* 107 U. S. 602, 2 Sup. Ct. 415, 27 L. ed. 500:

"A *donatio mortis causa* must be completely executed, precisely as required in the case of gifts *inter vivos,* subject to be divested by the happening of any of the conditions subsequent; that is, upon actual revocation by the donor, or by the donor's surviving the apprehended peril, or outliving the donee, or by the occurrence of a deficiency of assets necessary to pay the debts of the deceased donor."

The bill of sale here in question was executed by deceased during his last illness and upon the advice of his physician to put his affairs in order, but at about the time of its execution he appears to have made the remark that if

he should be alive on December 9th he would pay an assessment on certain stock owned by him, and from this evidence alone counsel infers that he still entertained hope of life, that he did not, therefore, intend to effect a present delivery of the property to respondent, and that the attempted disposition of the property must fail, both as a gift *causa mortis* and a testamentary disposition.

To constitute a valid gift *causa mortis,* it must be made with a view to the donor's death (*Duffield v. Elwes,* 1 Sim. & S. 240; *Champney v. Blanchard,* 39 N. Y. 111; *Grymes v. Hone,* 49 N. Y. 17, 10 Am. Rep. 313; *Edwards v. Jones,* 1 Mylne & C. 233; *Walter v. Hodge,* 2 Swanst. 97); it must have been given while the donor was in peril of death, or while he was under the apprehension of impending dissolution from an existing malady. (*Devol v. Dye,* 123 Ind. 321, 24 N. E. 246, 7 L. R. A. 439.)

A fair consideration of the remark attributed to the decedent, in view of his condition at the time and of the fact that he was then disposing not only of this property but of his entire estate, does not lead us to believe that he entertained a confident expectancy of his recovery, and if it be an expression of hope, it is that hope which grasps at impossibility, which ever urges on and tells us to-morrow will be better. It affords no indication that he was not under the apprehension of impending death, but rather creates the impression that he did not expect to recover. As was said in *Deneff v. Helms,* 42 Or. 161, 70 Pac. 390: "If . . . . the donor . . . . being in ill health, and apprehensive of death, in view of such condition and apprehension, delivers the property to a third person absolutely, thereby relinquishing all right to the possession and dominion over it, for the use of the donee under such circumstances as to indicate a present intention of transferring title to the latter, the gift is valid, and will be upheld. The fact that there is a possibility of the donor's recovery and his repossessing himself of the property is not obnoxious to the gift."

In most cases relating to gifts *causa mortis* the main question is, "What shall constitute a delivery of the thing

which is the subject of the gift?'' It was insisted by the
English chancellors in the early cases that there must be
an actual delivery of the chattel which was given. But the
strictness of the ancient rule has not been adhered to by
the modern cases. Equity looks rather to the intention of
the parties than to the manner of the delivery. Consequently
the delivery may be valid, though symbolic merely, where
under the particular circumstances an actual delivery is
impossible. (2 Underhill on Wills, sec. 758, pp. 1068, 1069;
*Williams v. Guile,* 117 N. Y. 343, 22 N. E. 1071, 6 L. R. A.
*366; Claytor v. Pierson,* 55 W. Va. 167, 46 S. E. 935.)

In *Sharpe v. Sharpe,* 105 S. C. 459, 90 S. E. 34, 3 A. L. R.
891, it is said: "In every gift, like in well-nigh every
human act, there exist two elements. One of these involves
the intent of the donor's mind; the other of these involves
the act of the donor's hand. If a donor intends to confer
on another ownership of his property, and if he proceeds
so far as to do it, then the gift is complete."

It has been held that the test of an effectual gift is that
the transfer was such that, in conjunction with the donative
intention, it completely stripped the donor of his dominion
of the thing given (*Cook v. Lum,* 55 N. J. L. 373, 26 Atl.
803), and in the absence of explanatory or contradictory evi-
dence, the possession by the donee of an instrument trans-
ferring the title to the property to him is sufficient to raise
the presumption that the instrument was delivered by the
grantor with intent that it should take effect according to
its terms. It is apparent, therefore, in this case, that the
decedent intended to confer on respondent ownership of the
property here involved, that he proceeded to do so by exe-
cuting and delivering to respondent a bill of sale to the
property, and that the gift was therefore complete. As is
said in *Sharpe v. Sharpe, supra:* "Gifts *causa mortis* are
older than the Republic; and if they be satisfactorily proved,
it is the duty of the court to give effect to them."

From what has been said it follows that the court did not
err in making the findings above referred to and in enter-

ing judgment in favor of respondent, nor in denying the motion for new trial. The judgment is therefore affirmed. Costs are awarded to respondent.

Rice, C. J., and Dunn, J., concur.